## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY GAINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:17-cv-01406-AKK** |
| | ) | |
| **JOHN R. COOPER and GARY** | ) | |
| **SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Timothy Gaines brings this civil rights action via 42 U.S.C. § 1983, against his supervisors in the Alabama Department of Transportation (ALDOT), John Cooper and Gary Smith (collectively the Defendants). Gaines seeks declaratory and injunctive relief as well as money damages against the Defendants in their official and individual capacities on the basis of unlawful racial discrimination and retaliation in violation of 42 U.S.C. §1981 and the Fourteenth Amendment. The Defendants have now moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 10. That motion is now adequately briefed, docs. 10; and 16, and ripe for decision. After carefully reviewing the complaint and the parties' respective briefs, the court concludes the Defendants' motion is due to be denied in part and granted in part.

# I.   STANDARD OF REVIEW

Typically, immunity issues are construed as challenges to the subject-matter jurisdiction of a federal court properly raised under Rule 12(b)(1), at least where, as here, the motion does not implicate the underlying merits of the case.  *See Garrett v. Talladega Cty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1373 (N.D. Ala. 2013); *Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1231 (N.D. Ala. 2012).  A 12(b)(1) challenge may take the form of a facial or factual attack on the complaint.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  A facial attack "'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion.'"  *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  On the other hand, a factual attack challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'"  *Id.* (quoting *Lawrence*, 919 F.2d at 1529.  In such an instance, the court may hear conflicting evidence and decide the factual issues bearing on jurisdiction.  *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991).  Here, the Defendants do not present any

evidence beyond the pleadings for review, and the court construes their jurisdictional challenge as facial.[1]

In addition to meeting this court's jurisdictional requirements, Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to comply with Rule 8(a)(2) or does not otherwise state a claim upon which relief can be granted. When evaluating a motion under Rule 12(b)(6),

---

[1] This ruling renders academic any debate regarding whether a motion to dismiss on Eleventh Amendment grounds is properly brought under Rule 12(b)(1) or Rule 12(b)(6). In either case, the procedural safeguards enjoyed by the plaintiff are the same. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (noting that a facial attack on jurisdiction under 12(b)(1) and a motion to dismiss for failure to state a claim under 12(b)(6) both require the deciding court to consider the allegations in the complaint as true); *see also Fleming v. Va. State Univ.*, No. 3:15CV268, 2016 WL 927186, at *1 n.4 (E.D. Va. Mar. 4, 2016) (explaining that because the same procedural protections are afforded under either approach "[t]he distinction makes no practical difference").

the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (emphasizing that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level"). Ultimately, the line between possibility and plausibility is a thin one making this determination a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.  <u>FACTS</u>

Gaines worked for ALDOT as a rest area attendant under the supervision of Gary Smith, the Director of ALDOT's Oneonta Division, at the Interstate 59 rest area in Ashville, Alabama for a little over four years. Doc. 1 at 2–3. During that time, Gaines was never disciplined or notified of any unsatisfactory conduct. *Id.* at 3. In May 2014, Gaines wrote a letter to Smith's supervisor in which Gaines

complained about his work hours and, more generally, about the treatment of African-American employees in the workplace. *Id.* Approximately a month later, Smith questioned Gaines, who is an African-American, regarding the letter, purportedly informing Gaines that "he should not have [complained]." *Id.* at 2, 3.

Within a few weeks of this conversation, Smith denied Gaines' request for a transfer to an open permanent rest area attendant position. *Id.* at 3. Gaines also requested shift changes during this time period which Smith uniformly denied. *Id.* at 3–4. Within three months of Smith's warning, ALDOT terminated Gaines, purportedly because Gaines failed to obtain his commercial driver's license (CDL) in a timely manner. *Id.* at 3–4. However, the time ALDOT had previously given Gaines to obtain his CDL had not expired when he was terminated. *Id.* at 4–5. Moreover, Gaines claims that ALDOT transferred three similarly situated white employees who also failed to obtain their CDL licenses instead of discharging them. *Id.* at 5.

## III.  DISCUSSION

The Defendants' motion relies on two arguments: (1) that, as state officials sued in their official capacity, the Defendants are immune from suit pursuant to the Eleventh Amendment; and alternatively, (2) that the Defendants are entitled to qualified immunity because the complaint fails to adequately allege that they

violated any of Gaines' clearly established rights. The court will address each argument in turn.

## A. *Eleventh Amendment Immunity*

It is well-settled that "state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). It is equally well-settled, however, that "the Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts." *Id.* Moreover, the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), declared that "suit[s] alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis . . . [do] not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). To determine whether a suit falls within the *Ex parte Young* exception for prospective relief, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

Here, although Gaines' complaint is far from clear, the caption of the document indicates that he is suing the Defendants in both their official and

individual capacities. Doc. 1 at 1. Thus, as Gaines concedes, to the extent his complaint can be construed as seeking an award of money damages from the Defendants in their official capacities, those claims are due to be dismissed. Doc. 16 at 5. However, Gaines' claim for damages against the Defendants in their individual capacities does not violate the Eleventh Amendment. *See Cross v. Ala. Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503 (11th Cir. 1995). The other remedies Gaines seeks including reinstatement, a permanent injunction against the Defendants' alleged continuing violation of federal law, and a declaration that the Defendants' employment policies and practices violate federal law all easily qualify as prospective. *See* Doc. 1 at 6. Accordingly, Gaines' requests for injunctive and declaratory relief fall within the *Ex parte Young* exception and also avoid the immunity bar imposed by the Eleventh Amendment. *See Verizon Md.*, 535 U.S. at 645 (suit to enjoin enforcement of a state official's order in contravention of federal law qualified as prospective relief for purposes of *Ex parte Young*); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999) (the Eleventh Amendment "does not generally prohibit suits seeking only prospective injunctive or declaratory relief"). In short, the Eleventh Amendment bars only Gaines' claim for monetary relief against the Defendants in their official capacities.

## B. Qualified Immunity

The defense of qualified immunity reflects both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, "government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for [the] suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999). The term discretionary authority includes "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of [her] duties,' and (2) were 'within the scope of [her] authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). The parties agree that this threshold inquiry is satisfied here, and that the Defendants were acting within their discretionary authority when they purportedly took various discriminatory actions against Gaines. Docs. 10 at 6–7; 16 at 7.[2]

Therefore, "'the burden shifts to [Gaines] to show that qualified immunity is not appropriate.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)

---

[2] The Defendants emphasize that because their employment decisions fell within the scope of their discretionary authority they are entitled to qualified immunity, but this position misconstrues the law. Acting within the scope of discretionary authority is necessary but not sufficient to invoke the shield of qualified immunity.

(quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  To make this showing, Gaines "must demonstrate . . . the following two things: (1) that the defendant[s] violated [his] constitutional rights, and (2) that, at the time of the violation, those rights were 'clearly established . . . in light of the specific context of the case, not as a broad general proposition.'"  *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009)).  The court "may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings."  *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

The Defendants do not argue that Gaines' rights under § 1981 and the Equal Protection Clause of the Fourteenth Amendment were not clearly established at the time of the alleged violations.  Thus, the court assumes without deciding, that Gaines has satisfied the second prong of the qualified immunity inquiry, at least with respect to his racial discrimination claims and his retaliation claims under § 1981.  However, because "no clearly established right exists under the equal protection clause to be free from retaliation," *Ratliff v. DeKalb Cty.*, 62 F.3d 338, 340 (11th Cir. 1995), the Defendants are entitled to qualified immunity with respect to Gaines' retaliation claims brought pursuant to the Fourteenth Amendment, and those claims are **DISMISSED**.  *See Lieu v. Bd. of Trs. of the*

*Univ. of Ala.*, No. 5:15-cv-02269, 2017 WL 2633402, at *3 (N.D. Ala. June 19, 2017) (finding that dismissal of a Fourteenth Amendment retaliation claim was appropriate on qualified immunity grounds because no clearly established right to be free from retaliation existed under that amendment).

Rather than focus on the nature of the rights at issue, the Defendants primarily contend that Gaines' complaint fails to show, as it must, a violation of federal law in the first instance. In other words, the Defendants appear to argue that the complaint does not plausibly allege the existence of a prima facie case of racial discrimination or retaliation under either the Fourteenth Amendment or § 1981. The court will address each contention in turn.

### 1. *Unlawful Termination Claims*

The Defendants' blanket attack on the complaint is unfounded as it relates to Gaines' claims arising from his discharge. First, as to both discharge-related claims, there is no serious question that Gaines was subjected to an adverse job action, termination. Further, Gaines, an African-American, belongs to a protected class. Likewise the complaint satisfies the employment discrimination requirement that Gaines was, in fact, qualified for his job by alleging that he "performed his job duties and responsibilities in a more than satisfactory manner" and that he "had never been disciplined during his employment with ALDOT." Doc. 1 at 3. While Gaines had not yet obtained his CDL, a requirement for his position, his time to do

so had purportedly not expired when he was discharged. *Id.* at 4–5. Significantly, Gaines complaint also establishes the *sine qua non* of an employment discrimination claim, disparate treatment, by alleging that ALDOT transferred three white employees who had also failed to obtain their CDLs instead of discharging them. *Id.* at 5. Accordingly, Gaines' allegation that the Defendants discharged him before the expiration of his deadline to obtain his CDL and treated similarly situated white employees more favorably is sufficient to state a plausible claim of intentional employment discrimination based on race, which is all Gaines must do at this stage of the proceeding. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (holding that a heightened pleading standard is not imposed on employment discrimination suits under the Federal Rules).[3]

Likewise, Gaines has alleged sufficient facts to support his § 1981 retaliatory discharge claim. Specifically, Gaines' complaint indicates he engaged in protected activity when he allegedly wrote a letter to a supervisor complaining "about treatment of African-American employees versus Caucasian employees." *Id.* at 3. While the complaint provides few specifics regarding the purportedly discriminatory treatment referenced in Gaines' letter, it does indicate that Gaines

---

[3] Moreover, contrary to the Defendants' contentions, Gaines' allegations that Defendant Cooper supervised him and participated in discharging him are sufficient to plausibly allege wrongdoing on Cooper's part. Doc. 1 at 4. While at some point Gaines will need to produce evidence regarding both Defendants' involvement in the discharge decision, his complaint has carried that burden for now.

expressed concerned over the distribution of work hours, *id.*, and it is well-settled that § 1981 protects employees from discrimination based on race in the employment context, including in the assignment of shifts and working hours. *See, e.g.*, *Brown v. Bibb Cty. Props., LLC*, 602 F. App'x 755, 757–58 (11th Cir. 2015). Thus, Gaines has sufficiently alleged that he complained about discriminatory conditions in the workplace and that he had an objectively reasonable belief that assigning hours on the basis of race was illegal. That is more than sufficient at the pleading stage for this court to find that Gaines' written complaint to a supervisor plausibly qualifies as protected activity.

As for whether the protected activity was "the but-for cause of the challenged employment action," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013), the complaint alleges that Smith, Gaines' direct supervisor, openly questioned Gaines regarding the letter, and, when Gaines admitted to writing it, Smith purportedly told him that "he should not have done that." Doc. 1 at 3. Gaines was terminated within, at the most, three months of that conversation. *Id.* at 3–4. While a delay of three to four months is not enough to establish an inference of retaliation standing alone, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), Gaines has pleaded other factual allegations bearing on his retaliation claims including: (1) his direct supervisor's verbal warning; (2) the fact that other similarly situated employees were not terminated; and (3) his

allegations of the denial of his shift and transfer and the pattern of other retaliatory actions which occurred within weeks of his supervisor's warning. Doc. 1 at 3–5. Moreover, Gaines has alleged that both Defendants supervised him and participated in the decision to terminate his employment. *Id.* at 4. At this stage, these allegations are sufficient to create the plausible inference that both Defendants, Gaines' supervisors who made the decision to terminate him, were aware of his protected conduct and discharged him in retaliation for engaging in that conduct. That is all Gaines must plead for his claim of retaliatory discharge to survive the Defendants' motion.

### 2. *Transfer and Job Assignment Claims*[4]

The Defendants' motion has some merit with respect to Gaines' claims arising out of the denial of his requests for a transfer and shift-changes. Specifically, the complaint is currently silent as to whether these denials qualify as adverse actions for purposes of stating a claim of employment discrimination on the basis of race. First, although a showing of economic harm is not necessary for an employment action to qualify as adverse, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Moreover, "'an

---

[4] Gaines has admitted that his claims regarding the denial of his transfer and shift-change requests implicate only Smith. Doc. 16 at 10. To the extent Gaines complaint could be read as asserting these claims against Cooper as well, those allegations are **DISMISSED**

employment action . . . is not adverse merely because the employee dislikes it or disagrees with it.'" *Doe v. DeKalb Cty. Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) (quoting *Perryman v. West*, 949 F. Supp. 815, 819 (M.D. Ala. 1996)). Relevant here, "[a] [denial of] transfer can constitute an adverse employment action . . . if [the transfer] involves an [increase] in pay, prestige, or responsibility." *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000); *see also Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F. App'x 831, 836–37 (11th Cir. 2015) (finding that a failure to transfer the plaintiff to a position without allegations of additional pay, prestige or responsibility was not "adverse"); *Melton v. Nat'l Dairy, LLC*, 705 F. Supp. 2d 1303, 1324–25 (M.D. Ala. 2010) (same).

Gaines' complaint provides no factual allegations regarding differing responsibilities, or pay between his position, at the time, and the position he sought a transfer to fill. Indeed, to the extent the complaint provides any facts regarding the transfer, it indicates that it was a lateral move to a similar rest area attendant position, albeit one Gaines describes as permanent. Doc. 1 at 2, 3–4.[5] Similarly, with respect to his request for a shift-change, Gaines has not alleged that the denial of his request constituted a material change in his employment, and generally, a mere shift-change, without more, is not sufficient to constitute adverse employment action. *See Gray v. Vestavia Hills Bd. of Educ.*, 317 F. App'x 898,

_____

[5] There is no allegation that the Gaines' held with ALDOT was temporary.

904 (11th Cir. 2008). Gaines' complaint simply does not contain any allegations that would enable this court to draw an inference that the denial of either his shift-change or his transfer request constituted an adverse employment action.

Moreover, Gaines has completely failed to plead the existence of disparate treatment with respect to the denial of these requests. His complaint simply provides that he subjectively believes his transfer and shift-change requests were denied "because of his race." Doc. 1 at 3, 4. But, for this court to draw an inference of racial discrimination, Gaines must, for example, also plead that his employer "treated similarly situated employees outside [his] classification more favorably," *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003), or otherwise allege additional facts showing that discriminatory animus factored into the decision to deny his requests. Here, Gaines' complaint simply fails to provide any basis to support his contention of racial animus. Therefore, because Gaines has failed to plead adequate factual content to allow the court to draw the plausible inference that discriminatory animus motivated the denial of his transfer and shift change requests, rather than the alleged retaliatory intent he also pleads, the motion to dismiss these claims is **GRANTED**, albeit without prejudice to replead.

As for the purportedly retaliatory denial of his request for a transfer and for various shift-changes, it is also not obvious that Gaines suffered a sufficiently

adverse employment action.  However, in the context of retaliation all that is required to make a showing of material adversity is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted); *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008) (explaining that *Burlington* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse.'").  While, as discussed, Gaines' complaint provides almost no information with respect to the nature of his requests for a transfer and shift-change, at this stage, the court must construe these allegations "in the light favorable to the plaintiff." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008) (quotation omitted).  Accordingly, the fact that these requests were made and denied is enough to create the plausible inference that such conduct could deter a reasonable worker from seeking to raise similar complaints of discrimination.  That is enough to satisfy the adversity requirement.

Moreover, for the reasons discussed above, Gaines has provided specific factual allegations linking the denial of his requests to the protected activity he engaged in.  As mentioned, his supervisor, Smith, questioned Gaines about his letter complaining about racial discrimination, and stated that "he should not have" written such a letter.  Doc. 1 at 3.  Gaines further alleges that Smith denied his

transfer request within weeks of their conversation regarding Gaines' complaint. *Id.* The Eleventh Circuit has previously found that "[a] period as long as one month between a protected activity and an adverse action is not too protracted to infer causation based on temporal proximity." *Faircloth v. Herkel Invs., Inc.*, 514 F. App'x 848, 852 (11th Cir. 2013). While it is true that Gaines submitted his complaint months before his transfer and shift-change requests, the denial of those requests, at least in part, took place within a few weeks of Smith's discovery of Gaines' authorship of the document. Doc. at 3–4. Accordingly, at the pleading stage, Gaines has provided enough evidence to support the plausible inference that a desire to retaliate was the but-for cause of Smith's decision to deny his requests for a transfer and for shift-changes.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the court **DENIES** the Defendants' motion, doc. 10, as it relates to the discriminatory and retaliatory discharge claims, and the § 1981 retaliation claims based on the denial of Gaines' transfer and shift change requests. The motion is **GRANTED** as to (1) Gaines' claim for the racially discriminatory denial of his shift change and transfer requests; (2) the alleged retaliation claims, if any, brought pursuant to the Fourteenth Amendment; (3) the retaliation claims against Cooper, if any, for the denial of Gaines' shift change and

transfer requests; and (4) the claim for money damages, if any, against the Defendants in their official capacity.

**DONE** the 5th day of December, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE