## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TIMOTHY GAINES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:17-cv-01406-AKK** |
| **JOHN R. COOPER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Timothy Gaines files this lawsuit under 42 U.S.C. § 1983 against John R.
Cooper, the Director of the Alabama Department of Transportation (ALDOT), and
Gary Smith, the manager of ALDOT's Oneonta District, where Gaines worked as a
Transportation Maintenance Technician. Doc. 1. Gaines asserts that the
Defendants violated the Fourteenth Amendment's equal protection clause and 42
U.S.C. § 1981 by discriminating against him on the basis of race and retaliating
against him when they discharged him before the end of his probationary period.
*Id.* The Defendants move for summary judgment on all claims, arguing that the
claims are barred by the statute of limitations, the Defendants' Eleventh
Amendment immunity, and that Gaines failed to establish the required elements of
his discrimination and retaliation claims. Docs. 29 and 32. For the reasons

discussed below, in particular, Gaines' failure to establish a prima facie case or to show pretext, the Defendants' motion is due to be granted.

## I.     STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis of the motion and proving the absence of a genuine dispute of material fact. *Id.* at 323. If the moving party meets that burden, the burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    ALDOT's Job Classifications and Policies

ALDOT created the Transportation Maintenance Technician ("TMT") position to replace the Highway Maintenance Technician ("HMT") position sometime before Gaines's employment. Doc. 31-31 at 6. TMTs perform a variety of services on ALDOT roads, and because of the vehicles they use, ALDOT requires TMTs to have a commercial driver's license ("CDL"). Docs. 31-7; 31-17; 31-33 at 1. After ALDOT created the TMT position, it reclassified HMTs who had a CDL as TMTs, and those who did not have a CDL as Transportation Workers ("TW"). Doc. 31-31 at 6-7. TWs perform unskilled labor, and are not required to have a CDL. Docs. 31-33 at 1; 39-1 at 5; 39-2 at 4.

ALDOT allows individuals hired as TMTs a six-month probationary period to obtain a CDL if they do not already have one. Doc. 31-3 at 19. In March 2010,

ALDOT adopted a policy to give employees one three-month extension if they did not obtain a CDL within their first six months of probationary employment. Docs. 31-1 at 35; 31-3 at 19-21; 31-4 at 20-21; 39-1 at 2-3. ALDOT's general policy is to discharge TMTs who do not earn a CDL before the end of their probationary period. Doc. 31-32 at 3. However, if ALDOT had originally hired an individual for a position that did not require a CDL, such as a TW, and promoted the individual to a TMT position, then that employee may have reversion rights, which would allow the employee to take a demotion to her previous position. *See* doc. 31-33 at 3; 31-7. *See also* Ala. Admin. Code 670-X-10-.01.

## B. Gaines' employment with ALDOT and attempts to earn his CDL

ALDOT hired Gaines, an African-American man, on a conditional basis as a TMT, effective December 2, 2013. Docs. 31-1 at 6, 8-10; 31-4; 31-6; 31-18 at 1. Gaines worked in the Oneonta District, and at all relevant times, Smith served as the manager of the District. Doc. 31-29 at 2-3; Doc. 31-30 at 2. By all accounts, Gaines was a good employee, and never received any disciplinary actions. Docs. 31-29 at 4, 24; 31-19; 39-1 at 3; 39-2 at 3; 31-29 at 4. As a conditional employee, Gaines understood that to achieve full merit, or permanent status, he had to earn his CDL within a six-month probationary period. Docs. 31-1 at 9-11, 31; 31-7 at 1; 39-1 at 2. In other words, Gaines knew that he had to have a CDL to maintain his employment. *See* doc. 31-1 at 20.

Consistent with policy, before his six-month probationary period ended, Gaines requested more time to prepare for and pass the CDL exam. Doc. 31-20. Smith recommended that ALDOT grant Gaines's request, and Steve Dukes, ALDOT's personnel director, also recommended the extension. Docs. 31-21; 31-29 at 4-5. ALDOT approved the extension for ninety days, docs. 31-1 at 32; 31-3 at 21; 31-22; 31-29 at 5, and informed Gaines that "[a]ccording to Departmental guidelines, [his] six-month probationary period may be extended by three additional months only once" and that he "must obtain a [CDL] by the end of [his] probationary period to obtain permanent status." Doc. 31-22.

Thereafter, Gaines took the written CDL exam at least two times, but did not pass. Docs. 31-1 at 20-21; 31-4 at 6, 15; 39-1 at 3; 39-2 at 3. Gaines talked with Mathis Jones, his supervisor, about his attempts to earn a CDL, but Gaines did not inform Smith that he had taken the written exam, and he did not request reimbursement from ALDOT for the fees he paid to take the exam. Docs. 31-1 at 22, 45; 31-30 at 3; 39-2 at 3. However, ALDOT did not require TMTs to apprise their district managers about their efforts to obtain a CDL. Doc. 31-1 at 23, 45; 39-1 at 3; 39-2 at 3.

C.    **Gaines's shift-change and transfer requests**

Before Gaines began working for ALDOT, employees in the Oneonta District asked to change their work shift from a standard five-day work week to a

four-day, ten hours per day work week, which Smith denied. *See* doc. 31-1 at 23. After ALDOT hired Gaines, at the urging of a co-worker, Gaines wrote a letter on behalf of the TMTs in the District to Smith and Smith's supervisors, asking for the ten-hour work day:

> We feel that we are not being treated with equality and fairness! We are under the Guntersville, Alabama Division and District. There maintenance employees, as well as other divisions are working the []4-day 10-hour work week[]. Because of the repeated rejection of our request for this (4-day, 10-hour work week), the morale among our maintenance workers is not well. . . . Inclusively, Mr. Smith, we the maintenance workers . . . are requesting that after careful review, you will grant us our request.

Doc. 31-4 at 18-19. *See also* docs. 31-1 at 23-24; 31-3 at 22; 39-1 at 3. Although he did not sign the letter, Gaines attached a petition he and twenty-two other TMTs signed in favor of a four-day work week. Docs. 31-1 at 23-24, 29; 31-4 at 18-19; 31-30 at 3-4; 39-1 at 3.

When Smith inquired, Gaines admitted that he wrote the letter. Docs. 31-at 25, 30; 31-4 at 4; 31-29 at 10; 39-1 at 4. In response, Smith threatened Gaines, telling him that he would regret writing the letter. Docs. 31-1 at 25; 39-1 at 4. According to Gaines, Smith's demeanor was hostile, and left Gaines intimidated and afraid of retaliation. Docs. 31-1 at 25-26; 39-1 at 4. Smith also told Gaines that the TMTs would continue to work the standard schedule, purportedly based on difficulties other district managers had after switching to a four-day work week. Doc. 31-30 at 5.

Roughly two months after the letter, ALDOT placed a TW in the Oneonta District on mandatory leave,[1] and reassigned his duties to Gaines and the other TMTs. Docs. 31-29 at 3; 31-30 at 12; 39-1 at 4-5; 39-2 at 3-4. When Gaines asked to transfer to the TW position, Smith denied the request without explanation. Docs. 31-1 at 37, 40-42; 31-3 at 16; 39-1 at 5; 39-1 at 5; 39-2 at 4. According to Gaines, ALDOT transferred at least three Caucasian employees (Evelyn Davis, Tim Whatley, and John Till) to TW positions when they failed to earn a CDL during their probationary periods. Docs. 31-1 at 38-40; 31-4 at 6; 39-2 at 4-5. *See also* docs. 39-3; 39-4; 39-5. ALDOT denies these contentions. *See* docs. 31-30 at 5-6; 31-33 at 1-3; 31-35 at 2.

### D. Gaines's termination

At the direction of Dukes, Smith sent a letter to Johnny Harris, ALDOT's First Division Engineer, dated July 30, 2014 stating as follows:

> As of today's date, Mr. Gaines has not yet received his CDL. His extended probationary period will end on August 31, 2014.[2] I recommend that his employment with [ALDOT] be terminated on August 31, 2014, for failure to meet his conditions of employment.

Docs. 31-23; 31-29 at 5-6. *See also* 31-31 at 3; 39-1 at 5. Smith testified that, before writing the letter, he contacted Jones, who informed him that Gaines had not

---

[1] ALDOT placed the employee on leave due to criminal charges, but did not discharge the employee until November 25, 2014. Doc. 31-30 at 6, 12-13.

[2] Gaines' probationary period actually ended on September 2, 2014; Smith could not explain the two-day discrepancy. *See* doc. 31-20 at 5

yet begun the process of obtaining his CDL, which, according to Smith and Dukes, is a month-long process. Docs. 31-29 at 6-7, 12; 31-30 at 3; 31-31 at 4. Smith did not ask Gaines or Jones what steps Gaines had taken to try to obtain a CDL before writing the letter, and Smith was not aware that Gaines had attempted the written portion of the CDL exam. Docs. 39-2 at 5; 31-29 at 6.

After receiving the letter, Harris wrote to Cooper, recommending that ALDOT discharge Gaines "as soon as possible." Docs. 39-1 at 4-5. Based on that recommendation, ALDOT discharged Gaines thirty-one days before the end of his probation. Docs. 31-3 at 26; 31-25; 31-26. This action followed.

## III. ANALYSIS

Based on an earlier ruling dismissing some of Gaines's claims,[3] only the following claims remain: (1) § 1983 claims for discriminatory discharge in violation of the Fourteenth Amendment, (2) § 1981 claims for discriminatory discharge; (3) § 1981 claims for retaliatory discharge, and (3) § 1981 claims against Smith for retaliatory denial of transfer and shift change requests. *See* doc. 1.[4] In support of their motion for summary judgment, the Defendants argue,

---

[3] The court previously dismissed (1) claims for discriminatory denial of Gaines's shift change and transfer requests, (2) retaliation claims based on violations of the Fourteenth Amendment, (3) claims against Cooper for retaliatory denial of Gaines's shift change and transfer requests, and (4) claims for monetary damages against the Defendants in their official capacities. Doc. 17 at 17-18.

[4] Gaines asserts his § 1981 claims against the Defendants pursuant to § 1983, *see* docs. 1; 38 at 13, in light of the fact that "[s]ection 1981 does not provide a cause of action against state

among other things, that the § 1983 discriminatory discharge claims are time-barred, and that Gaines did not establish required elements of his § 1981 claims. The court addresses these contentions in turn.

A.    **Whether the § 1983 discriminatory discharge based on alleged violations of the Fourteenth Amendment claims are time-barred**

The Defendants argue that Gaines's § 1983 claims based on his allegations that ALDOT discharged him on the basis of his race in violation of the Fourteenth Amendment are time-barred.  Doc. 32 at 15-16.  Gaines did not respond to these arguments, *see* doc. 38, and has thus waived these claims.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citations omitted).  Alternatively, the claim fails on the merits.  Because § 1983 does not provide a statute of limitations, "federal courts are to borrow the 'general' or 'residual' statute of limitations for personal injuries provided under the law of the state where the court hearing the case sits."  *Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). In Alabama, the residual statute of limitations for personal injury actions is two years.  Ala. Code § 6-2-38(l); *Baker*, 531 F.3d at 1337 (applying a two-year statute

---

actors; instead, [and] claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008) (citations omitted).  To avoid confusion with the § 1983 claims based on alleged violations of the Fourteenth Amendment, the court refers to the claims based on alleged violations of § 1981 as the "§ 1981 claims."

of limitations to § 1983 claims) (citations omitted).  Because ALDOT discharged Gaines on August 1, 2014, the statute of limitations for the § 1983 discriminatory discharge claims based on alleged violations of the Fourteenth Amendment expired more than one year before Gaines filed this lawsuit.  As a result, the claims are time-barred.

**B.**     **Whether Gaines Established a Question of Material Fact Regarding his § 1981 Discriminatory Discharge Claims**

Gaines asserts § 1981 discriminatory discharge claims against the Defendants based on his allegations that ALDOT terminated him before the end of his probationary period on account of his race.  Doc. 1.[5]  Where, as here, a plaintiff relies on circumstantial evidence to prove a discrimination claim, the court applies the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248 (1981).  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330-31 (11th Cir. 1998).  Under that familiar framework, the plaintiff bears the initial burden of establishing a prima facie case.  *E.g., Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc).  If the plaintiff satisfies this burden, the burden shifts to the employer to produce a legitimate, non-

---

[5] Although Gaines asserts his § 1981 discriminatory discharge claims pursuant to § 1983, a four-year statute of limitations applies to the claims because they were made possible by the 1991 amendment to § 1981.  *See Baker*, 531 F.3d at 1338 (applying the federal four-year statute of limitations to a plaintiffs' claims asserted pursuant to § 1983 and based on allegations that the defendant discharged him and retaliated against him in violation of § 1981) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).

discriminatory reason for the challenged action. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citation omitted). Then, the burden shifts to the plaintiff to prove that the employer's proffered reason is pretext for its actual, discriminatory purposes. *Id.*

### 1. Gaines's prima facie case of discrimination

A plaintiff may establish a prima facie case by showing that he was a "qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside the protected class." *Id.* The parties do not dispute that Gaines is a member of a protected class and that he suffered an adverse employment action. *See* doc. 32 at 21. ALDOT contends, however, that Gaines was not qualified for his job and cannot show that ALDOT treated him differently than similarly-situated employees outside of his class.

### a. *whether Gaines is qualified*

As mentioned above, Gaines was a good employee, who received positive reviews during his employment. Docs. 31-19; 31-20 at 4. Even so, the Defendants contend that Gaines was not qualified for his TMT position because he did not have a CDL. Doc. 32 at 21. Gaines, however, was not required to have a CDL during his probationary period. *See* doc. 31-22. Moreover, Smith testified that ALDOT would have retained Gaines beyond his probationary period if he had

earned a CDL. *See* doc. 31-29 at 4. This testimony and Gaines's positive employment review create at least a question of fact regarding whether Gaines was qualified for the job at the time of his discharge. Therefore, the court turns to whether Gaines has shown that ALDOT treated him less favorably than similarly-situated employees outside his protected class.

>    b.    *whether ALDOT treated Gaines differently than similarly-situated employees*

Gaines claims that ALDOT treated similarly-situated Caucasian employees (Timothy Whatley, John Till, and Evelyn Davis) more favorably by allowing them to transfer to TW positions, which do not require a CDL, when they failed to obtain a CDL within their probationary period. Docs. 1 at 5; 38 at 18-24. The Eleventh Circuit recently addressed the standard district courts must apply to determine whether a plaintiff and his comparators are, in fact, similarly situated, holding that "a plaintiff must show that []he and [his] comparators are 'similarly situated in all material respects.'" *Lewis*, 918 F.3d at 1224. Courts must apply this standard "on a case-by-case basis, in the context of the individual circumstances" of the case, considering, among other things, whether the plaintiff and comparators "engaged in the same basic conduct," "have been subject to the same employment policy, guideline, or rule," and share similar employment or disciplinary histories. *Id.* at 1227-28 (citations omitted).

Consistent with *Lewis*, the court turns now to the alleged comparators to ascertain whether they are indeed similarly situated to Gaines. ALDOT hired Whatley as a Highway Maintenance Technician ("HMT"). Docs. 31-33 at 2; 31-34 at 22; 39-4. ALDOT phased out the HMT position when it created the TMT position, and it reclassified HMTs who did not have a CDL as TWs. Doc. 31-31 at 6-7. Because Whatley did not have a CDL, ALDOT reclassified him as a TW in March 2007, a position he held for over three years until he resigned. Docs. 31-33 at 2; 31-34 at 22-25. ALDOT subsequently rehired Whatley as a TW, and then promoted him to a TW Senior position, which he held until he resigned again in 2018. Docs. 31-33 at 2; 31-34 at 26-28. As for Till, ALDOT hired him as a laborer, and promoted him to a HMT position one year later. Docs. 31-33 at 1; 31-34 at 15-16. After his resignation, ALDOT subsequently rehired Till as a TW, and he is still in this position. Docs. 31-33 at 2; 31-34 at 17-18. Finally, ALDOT hired Davis as a Laborer, and promoted her to an HMT position a year later. Docs. 31-33 at 2; 31-34 at 19-20. Thereafter, once ALDOT created the TMT position, it reclassified Davis as a TW, a position she still holds today. Docs. 31-33 at 2; 31-34 at 21.

Noticeably absent from these work histories is any entry showing that these individuals transferred to a TW position after they failed to obtain a CDL during their probationary periods. In fact, the record establishes that, unlike Gaines,

Whatley, Till, and Davis were never TMTs. But job titles alone are not determinative regarding whether employees are similarly situated, *Lewis*, 918 F.3d at 1227, and Gaines introduced evidence that the "job duties between an HMT and TMT are very similar . . . ." Doc. 39-2 at 4. Even so, Whatley, Till, and Davis held HMT positions before ALDOT implemented its policy of allowing an employee only one three-month extension of his probationary period. *See* doc. 31-3 at 19-20. Thus, these three individuals were not subject to the same policy as Gaines, which weighs against them being similarly-situated comparators: "Ordinarily [] a similarly situated comparator . . . will have been subject to the same employment policy, guideline, or rule as the plaintiff . . . ." *Lewis*, 918 at 1227 (citation omitted). Moreover, ALDOT offered evidence that it reclassified all HMTs who did not hold a CDL, including Davis and Whatley, as TWs after the creation of the TMT position, and Gaines does not challenge that evidence. *See* docs. 31-31 at 6-7; 38. In other words, the record belies Gaines's contention that ALDOT allowed these three to transfer to a TW position during their probationary periods.

Next, after Whatley and Till resigned, ALDOT re-hired them as TWs, which does not require a CDL. Docs. 31-33 at 1-2; 31-34 at 18, 26; 39-1 at 5; 39-2 at 4. In contrast, ALDOT hired Gaines as a TMT, and he knew he could only continue his employment if he obtained his CDL. Docs. 31-1 at 9-11, 20, 31; 31-7 at 1; 39-

2 at 2. Put differently, Whatley and Till have materially different employment histories from Gaines, and they had different work requirements than Gaines. Those differences show that Whatley and Till are not similarly situated to Gaines. *See Lewis*, 918 F.3d at 1228 (noting that similarly-situated comparators will generally "share the plaintiff's employment or disciplinary history").

Finally, Davis's employment history is also materially different because ALDOT originally hired Davis for a position that did not require a CDL. Doc. 31-34 at 19. Therefore, unlike Gaines, Davis had rights to revert to her laborer position when she did not earn a CDL during her probationary period. *See* doc. 31-33 at 3; 31-7; Ala. Admin. Code 670-X-10-.01. And, Davis held the HMT position before ALDOT reclassified it and created the TMT position. As a result of this reclassification, she became a TW. Docs. 31-33 at 2; 31-34 at 21. Because she was subject to a different work rule based on her employment history, Davis is not similarly situated to Gaines in all material respects. *See Lewis*, 918 F.3d at 1227-28.

To summarize, Whatley, Till, and Davis were not subject to the same ALDOT policies and rules as Gaines, and had materially different job requirements and work histories than Gaines. As such, they are not "similarly situated in all material respects," and are, therefore, not valid comparators. *See Lewis*, 918 F.3d

at 1227-28. Consequently, Gaines has not established a prima facie case of discrimination.[6]

### 2. ALDOT's proffered reason and pretext

Alternatively, even if Gaines had established a prima facie case, to survive summary judgement, he still must show at least a question of fact regarding whether ALDOT's proffered reason for its action—i.e., that ALDOT discharged Gaines because he failed to obtain his CDL during his probationary period, doc. 32 at 23, is pretextual. To show pretext, Gaines cites (1) ALDOT's purported failure to discharge Caucasian employees Whatley, Till, and Davis for failing to obtain a CDL during their probationary periods; and (2) the decision to discharge him thirty-one days before his probationary period ended. Doc. 38 at 25-28. Neither of these arguments is sufficient to show pretext.

First, as discussed above, Whatley, Till, and Davis are not similarly-situated comparators. *See*, pp. 12-15, *supra*. As such, ALDOT's treatment of them does not indicate that racial animus motivated its decision to discharge Gaines, or that ALDOT's stated reason for discharging Gaines is pretext for unlawful discrimination. Second, both Smith and Dukes testified that obtaining a CDL is a

---

[6] The "plaintiff's failure to produce a comparator does not necessarily doom [his] case," as long as he can present a "triable issue of fact" through "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). But, in this case, Gaines has not introduced evidence of any race-based conduct by ALDOT, apart from his contention that ALDOT treated the three purported comparators more favorably. *See* doc. 38.

lengthy process and that "it would be very difficult, if not impossible, to get a CDL [] within four weeks." Docs. 31-29 at 6-7, 12; 31-30 at 3; 31-31 at 4. Gaines attempts to cast doubt on that testimony by arguing that this contention is just their personal opinion. Doc. 38 at 28. But, Gaines does not offer any evidence of his own to rebut Smith and Dukes, or to show that they knew it would have been possible for him to obtain a CDL in thirty days. *See id.* Based on Smith's and Dukes' unrebutted testimony, ALDOT could have reasonably believed that Gaines would not be able to obtain his CDL before the end of his probationary period. Thus, the fact that ALDOT discharged Gaines thirty-one days before the end of his probationary period does not suggest that ALDOT's proffered reason for doing so was pretextual. While the decision is certainly unfair in that, at a minimum, it deprived Gaines of a month's pay, the circuit has made clear that "it is not [the court's] role to second-guess the wisdom of an employer's business decisions— indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez*, 610 F.3d at 1266 (citation omitted). Therefore, Gaines's failure to show that ALDOT's proffered reason for its action is pretext for a discriminatory purpose also dooms the § 1981 discriminatory discharge claims.

### C. Whether Gaines Establish a Question of Material Fact Regarding his § 1981 Retaliation Claims

Gaines asserts § 1981 retaliatory discharge claims against both Defendants and a claim against Smith for retaliatory denial of transfer and shift change requests. Doc. 1. To prevail on his retaliation claims, Gaines must first establish a prima facie case by showing "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (quotation omitted). At issue here is whether Gaines engaged in a statutorily protected activity. An employee engages in statutorily protected activity for purposes of § 1981 when he opposes "race discrimination, whether or not he personally is the victim of that race discrimination." *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295 (11th Cir. 2006) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997) and *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1229 (5th Cir. 1982)). To establish protected activity, an employee does not need to show that the employer actually engaged in race discrimination, but that he "'had a good faith, reasonable belief that the employer was engaged in [race discrimination].'" *Butler*, 536 F.3d at 1213 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). To make that showing, the employee "'must not only show that he subjectively . . . believed that his employer was engaged in [race discrimination], but also that his

belief was objectively reasonable in light of the facts and record presented.'" *Id.* (quoting *Little*, 103 F.3d at 960) (emphasis in original omitted).

Here, Gaines alleges that he engaged in protected activity by writing the May 2014 letter to Smith requesting a shift change for TMTs, and that the Defendants denied him a transfer and discharged him in retaliation. Docs. 1 at 3-5; 38 at 31-32. Gaines has certainly presented evidence that Smith threatened him after Smith received the letter, and there is a temporal closeness between the letter and the adverse actions. But, the letter complains only that the maintenance employees in the Oneonta District "are not being treated with equality and fairness," and does not mention race or suggest that ALDOT treats the employees unfairly on account of race. *See* doc. 31-4 at 18. Moreover, Gaines wrote the letter on behalf of African-American and Caucasian employees in the Oneonta District. Docs. 31-4 at 18-19; 39-1 at 3. Based on this evidence, Gaines could not have reasonably believed that he was opposing race discrimination when he complained about the employees' shift and asked ALDOT to implement a four-day work week. In addition, Gaines offers no evidence to suggest that he subjectively believed that racial animus motivated the decision concerning the five-day work week for employees in the Oneonta District. *See* doc. 39-1. As a result, no material question of fact exists regarding whether Gaines engaged in statutorily protected activity when he wrote the letter to Smith, and since § 1981 only covers

actions related to race, it does not cover the alleged retaliation here. Therefore, Gaines's retaliation claims fail.

## IV.    CONCLUSION

In light of Gaines's failure to establish a prima facie case for his discriminatory discharge claims or, as to his retaliation claims, to show that he engaged in statutorily protected activity, the Defendants' motion for summary judgment is due to be granted. A separate order will be entered.

**DONE** the 18th day of June, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE